UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

Kimberly Dean,

                        Plaintiff,

      v.

Commissioner of Social Security,

                        Defendant.

**Decision and Order**

18-CV-6323 HBS
(Consent)

## I. INTRODUCTION

The parties have consented to this Court's jurisdiction under 28 U.S.C. § 636(c). The Court has reviewed the Certified Administrative Record in this case (Dkt. No. 9, pages hereafter cited in brackets), and familiarity is presumed. This case comes before the Court on cross-motions for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure. (Dkt. Nos. 10, 14.) In short, plaintiff is challenging the final decision of the Commissioner of Social Security (the "Commissioner") that she was not entitled to Disability Insurance Benefits under Title II, or Supplemental Security Income under Title XVI, of the Social Security Act. The Court has deemed the motions submitted on papers under Rule 78(b).

## II. DISCUSSION

"The scope of review of a disability determination . . . involves two levels of inquiry. We must first decide whether HHS applied the correct legal principles in making the determination. We must then decide whether the determination is supported by substantial evidence." *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987) (internal quotation marks and citations omitted). When a district court reviews a denial of benefits, the Commissioner's findings as to any fact, if supported by substantial evidence, shall be conclusive. 42 U.S.C. § 405(g). Substantial evidence is defined as

"'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *see also Tejada v. Apfel*, 167 F.3d 770, 773-74 (2d Cir. 1999).

The substantial evidence standard applies to both findings on basic evidentiary facts, and to inferences and conclusions drawn from the facts. *Stupakevich v. Chater*, 907 F. Supp. 632, 637 (E.D.N.Y. 1995); *Smith v. Shalala*, 856 F. Supp. 118, 121 (E.D.N.Y. 1994). When reviewing a Commissioner's decision, the court must determine whether "the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached" by the Commissioner. *Winkelsas v. Apfel*, No. 99-CV-0098H, 2000 WL 575513, at *2 (W.D.N.Y. Feb. 14, 2000). In assessing the substantiality of evidence, the Court must consider evidence that detracts from the Commissioner's decision, as well as evidence that supports it. *Briggs v. Callahan*, 139 F.3d 606, 608 (8th Cir. 1998). The Court may not reverse the Commissioner merely because substantial evidence would have supported the opposite conclusion. *Id.*

For purposes of Social Security disability insurance benefits, a person is disabled when unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A).

Such a disability will be found to exist only if an individual's "physical or mental impairment or impairments are of such severity that [he or she] is not only unable to do [his or her] previous work but cannot, considering [his or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . . ." 42 U.S.C. §§ 423(d)(2)(A) & 1382c(a)(3)(B).

2

Plaintiff bears the initial burden of showing that the claimed impairments will prevent a return to any previous type of employment. *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982). Once this burden has been met, "the burden shifts to the [Commissioner] to prove the existence of alternative substantial gainful work which exists in the national economy and which the plaintiff could perform." *Id.*; *see also Dumas v. Schweiker*, 712 F.2d 1545, 1551 (2d Cir. 1983); *Parker v. Harris*, 626 F.2d 225, 231 (2d Cir. 1980).

To determine whether any plaintiff is suffering from a disability, the Administrative Law Judge ("ALJ") must employ a five-step inquiry:

(1) whether the plaintiff is currently working;

(2) whether the plaintiff suffers from a severe impairment;

(3) whether the impairment is listed in Appendix 1 of the relevant regulations;

(4) whether the impairment prevents the plaintiff from continuing past relevant work; and

(5) whether the impairment prevents the plaintiff from continuing past relevant work; and whether the impairment prevents the plaintiff from doing any kind of work.

20 C.F.R. §§ 404.1520 & 416.920; *Berry*, *supra*, 675 F.2d at 467. If a plaintiff is found to be either disabled or not disabled at any step in this sequential inquiry then the ALJ's review ends. 20 C.F.R. §§ 404.1520(a) & 416.920(a); *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). However, the ALJ has an affirmative duty to develop the record. *Gold v. Secretary*, 463 F.2d 38, 43 (2d Cir. 1972).

To determine whether an admitted impairment prevents a plaintiff from performing past work, the ALJ is required to review the plaintiff's residual functional capacity ("RFC") and the physical and mental demands of the work done in the past. 20 C.F.R. §§ 404.1520(e) & 416.920(e). The ALJ must then determine the individual's ability to return to past relevant work given the RFC. *Washington v. Shalala*, 37 F.3d 1437, 1442 (10th Cir. 1994).

3

Plaintiff has challenged the Commissioner's final determination by arguing that the ALJ failed to assess the opinion of her treating pulmonologist, Dr. Asad Nasir. Dr. Nasir treated plaintiff between November 9, 2015 and December 28, 2016 [561–76]; Dr. Nasir also completed an RFC questionnaire on March 27, 2017 [545–46]. The ALJ cited the questionnaire but, unlike with other treatment providers or consultants, did not state whether Dr. Nasir's opinion received any weight or how much weight it did receive. [25.] Plaintiff emphasizes how the failure to assign weight to the opinions in Dr. Nasir's questionnaire had an impact on Steps Four and Five of the ALJ's inquiry:

> The ALJ provides no explanation whatsoever why she does not adopt any of Dr. Nasir's opinion, despite the fact that he is a treating physician. This is error. The failure to consider Dr. Nasir under the treating physician rule is a like, yet separate, legal error by the ALJ because Plaintiff is entitled to have this opinion evaluated under that rule. 20 C.F.R. 404.1527(c)(2). The error is prejudicial because Dr. Nasir assessed limitations to work pace (off task 15-20%) and absenteeism (3 days per month) inconsistent with the demands of full time work as testified to by the vocational expert (maximum off task of 15% and maximum unexcused absences of one per month). Tr. 60.

(Dkt. No. 10-1 at 15; *see also* Dkt. No. 17 at 1–2.) The Commissioner implicitly acknowledges the ALJ's failure to assign weight to Dr. Nasir's opinions but argues that the ALJ did consider Dr. Nasir's clinical information:

> Plaintiff stated that the ALJ did not explicitly weigh Dr. Nasir's opinion (Tr. 12). However, the ALJ did consider that opinion and set forth a summary of the limitations assessed by the doctor (Tr. 21). Interestingly, Plaintiff did not name him as one of her physicians when she applied for benefits, (Tr. 219-20), nor did she identify Dr. Nasir when she filed for appeal (Tr. 258), and also did not list him when the ALJ's office requested her to identify her doctors (Tr. 279). That suggests that she did not regard treatment of her breathing issues significant enough to mention.
>
> What's more, the bulk of the limitations set forth by in the form completed by the doctor are consistent with the ALJ's RFC. For example, the doctor assessed that she could frequently lift up to five pounds and occasionally lift up to 10 pounds and be seated most of the workday (Tr. 542) and the RFC provided that Plaintiff could perform work at the sedentary level of exertion which involves lifting no more than ten pounds at a time and involves mostly sitting. 20 C.F.R. §§ 404.1567(a), 416.967(a); SSR 96-9p. In terms of position changes every 30 minutes, the Second Circuit has observed that "[t]he regulations do not mandate the presumption that all

4

sedentary jobs in the United States require the worker to sit without moving for six hours, trapped like a seat-belted passenger in the center seat on a transcontinental flight." Halloran v. Barnhart, 362 F.3d 28, 33 (2d Cir. 2004). Further, in terms of Plaintiff's breathing impairment, the RFC restricted Plaintiff from concentrated exposure to respiratory irritants (Tr. 17).

With respect to other limitations asserted by Dr. Nasir, the record contained multiple reports from treating and examining sources that found no significant lung or breathing problems. (Tr. 296 (normal respiratory findings), 300 (same), 304 (only mild rhonci), 314 (no distress, only mild wheezes), 364 (chest and lung examination found no abnormalities), 386 (normal respiratory findings), 391 (same), 509 (clear lungs, no wheezes or rhonci), 579 (normal respiratory findings), 581 (negative respiratory findings), 584 (normal respiratory findings), 588 (same), 593 (same), 598 (clear lungs, breathing comfortably), 609 (same), 762 (respiration normal, no distress). Where the evidence in the record permits the court "to glean the rationale of an ALJ's decision," the ALJ need not mention every item of testimony presented or even explain why particular evidence was considered unpersuasive or insufficient to support a conclusion of disability. Miller v. Commissioner of Social Security, 409 Fed.Appx. 384, 388 (2d Cir. Dec. 2, 2010) (citing Mongeur v. Heckler, 722 F.2d 1033, 1040 (2d Cir. 1983)).

Indeed, if her breathing caused such significant limitations, one would expect her to seek treatment or at least offer consistent complaints about breathing problems, and to stop smoking once and for all, but she did not (see, e.g., Tr. 294 (continued to smoke), 304 (did not want to quit smoking), 363 (continued to smoke)).

While the ALJ was not as explicit in the reasoning on this issue as possible, "an ALJ does not have to state on the record every reason justifying a decision, nor is an ALJ required to discuss every piece of evidence submitted." Bonet ex rel. T.B. v. Colvin, 523 F.App'x 58, 59 (2d Cir. June 27, 2013) (summary order) citing Brault v. Soc. Sec. Admin. Comm'r, 683 F.3d 443, 448 (2d Cir. 2012)(quotation omitted). An ALJ is not required to explicitly … reconcile every conflicting shred of medical testimony…. It is sufficient that the ALJ noted that he carefully considered the exhibits presented in evidence in reaching his decision." Stevenson v. Berryhill, 1:16-CV-00379 (MAT), 2017 WL 2349733, at *3 (W.D.N.Y. May 31, 2017) (unpublished; citing Miles v. Harris, 645 F.2d 122, 124 (2d Cir. 1981)).

(Dkt. No. 14-1 at 25–27.)

The RFC that the ALJ determined might eventually be supported by substantial evidence.

For now, though, plaintiff has the better argument. At the administrative hearing on May 9, 2017,

the ALJ's Vocational Expert ("VE") testified explicitly about "off task" time and unexcused absences that would rule out possible employment:

> Q. So, Mr. Baker, in your professional vocational opinion, what's the standard employer tolerance of the percentage of time off task?
>
> A. Maximum allowable is 15%. Anything greater rules out all employment.
>
> Q. And for unexcused absenteeism?
>
> A. Maximum allowable is one per month. Anything greater rules out all employment.

[64.] In the RFC questionnaire that he completed, Dr. Nasir opined—admittedly through checkmarks—that plaintiff would be off task more than 15 percent of the time and likely would miss three days per month of work. At face value, then, Dr. Nasir's opinions would cross the VE's threshold for restrictions that would rule out possible employment. Yet the ALJ did not address at all this combination of VE testimony and treating physician opinions. *Cf. Cosnyka v. Colvin*, 576 F. App'x 43, 46 (2d Cir. 2014) (summary order) ("The record is unclear as to the length of individual breaks Cosnyka would need, and it is unclear as to the availability of jobs that could accommodate whatever breaks he needed."); *Rugless v. Comm'r*, 548 F. App'x 698, 700 (2d Cir. 2013) (summary order) ("In addition, we need some explanation of why there was no discussion in the ALJ's decision of Dr. Carroll's opinion that appellant would have to miss more than four days per month, would require unscheduled ten to fifteen minute breaks on a daily basis, and would be off-task more than twenty percent of the workday because of his limitations."); *Harvey v. Comm'r*, No. 17-CV-6815-CJS, 2019 WL 1010449, at *4 (W.D.N.Y. Mar. 4, 2019) ("The Court is concerned that the ALJ's reliance on the portions of [a physician's] report that supported his RFC determination failed to account for the portions [about off-task time and absences] that did not. To the extent that the ALJ found [the

6

physician's] conclusion about Plaintiff's ability to work inconsistent with portions of his statement, the ALJ was duty bound to seek clarification.") (citation omitted).

The failure to address a potential threshold restriction requires remand. Upon remand, the ALJ will be free to assign whatever weight or credibility to the above testimony and opinions that substantial evidence can support. The Court takes no position at this time as to how that credibility assessment should conclude. The Court also declines to address at this time any of the other issues that the parties have raised.

### III. CONCLUSION

For the above reasons, the Court denies the Commissioner's motion (Dkt. No. 14). The Court grants plaintiff's cross-motion (Dkt. No. 10) in part to vacate the Commissioner's final decision and to remand the matter for further proceedings consistent with this Decision and Order. The Court denies plaintiff's cross-motion to the extent that it seeks any other relief.

The Clerk of the Court is directed to close the case.

SO ORDERED.

    __/s Hugh B. Scott_____
    Hon. Hugh B. Scott
    United States Magistrate Judge

DATED: July 31, 2019